# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN BUTTERWORTH, et al., | ) | 1:11cv01203 LJO DLB |
| | ) | |
| Plaintiffs, | ) | ORDER DENYING PLAINTIFF'S MOTION TO REMAND ACTION |
| v. | ) | |
| | ) | (Document 10) |
| AMERICAN EAGLE OUTFITTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Brian Butterworth ("Plaintiff"), individually and on behalf of others similarly situated, filed the instant Motion to Remand this action to the Stanislaus County Superior Court on August 19, 2011. The motion was heard on October 7, 2011, before the Honorable Dennis L. Beck, United States Magistrate Judge. Raul Perez appeared on behalf of Plaintiff. Lee J. Hutton appeared on behalf of Defendant American Eagle Outfitters, Inc. ("Defendant").

**BACKGROUND**

Plaintiff, individually and on behalf of all others similarly situated, filed a putative class and representative action against Defendant in Stanislaus County Superior Court on May 12, 2011. Plaintiff filed a First Amended Complaint ("FAC") on June 8, 2011, alleging eight wage and hour claims under California law.

Defendant filed its answer in Stanislaus County Superior Court on July 18, 2011. On July 20, 2011, Defendant removed the action to this Court pursuant to this Court's original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Plaintiff filed this Motion to Remand on August 19, 2011.  Defendant opposed the Motion on September 23, 2011, and Plaintiff filed his reply on September 30, 2011.[1]

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff alleges that from October 2008 through February 2011, he worked as a sales associate, a non-exempt hourly paid position, at Defendant's retail stores in Capitola and San Jose, California.  His duties included helping customers pick out clothing, opening fitting rooms, operating cash registers, unloading merchandise trucks and stocking new items.

Plaintiff alleges eight causes of action: (1) unpaid minimum wages in violation of California Labor Code sections 1194, 1197 and 1197.1; (2) unpaid reporting time in violation of California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(5); (3) failure to compensate for split shifts in violation of California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(4)(C); (4) failure to provide seating in violation of California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(14); (5) wages not timely paid upon termination in violation of California Labor Code sections 201 and 202; (6) non-compliant wage statements in violation of California Labor Code section 226(a); (7) violation of the California Private Attorneys General Act ("PAGA"), California Labor Code sections 2698, et seq.,[2] and (8) violation of the California Business and Professions Code sections 17200, et seq.

## LEGAL STANDARD

Congress enacted the Class Action Fairness Act ("CAFA") to "'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate

---

[1] Plaintiff incorrectly contends that the opposition is untimely.  Local Rule 230(c) requires an opposition to be filed 14 days from the noticed *or continued* hearing date.

[2] In general, PAGA is intended to authorize aggrieved employees, acting as private attorneys general, to assess and collect civil penalties for violations of the Labor Code.  Under PAGA, Plaintiff may seek penalties in the sum of one hundred dollars ($100) per aggrieved employee, per pay period, for an initial Labor Code violation, and two hundred dollars ($200) for each subsequent violation per aggrieved employee, per pay period. Cal. Lab.Code § 2699(f)(2).  If an employee successfully recovers an award of civil penalties, PAGA mandates that 75 percent of the recovery be paid to the Labor and Workforce Development Agency ("LWDA"), leaving the remaining 25 percent as recovery for the employee.  Amaral v. Cintas Corp., 163 Cal.App.4th 1157, 1195(2008).

multi-state or even national class actions in state courts.'" United Steel v. Shell Oil Co., 602 F.3d 1087, 1090 (9th Cir. 2010) (quoting Tanoh v. Dow Chem. Co., 561 F.3d 945, 952 (9th Cir. 2009)). CAFA vests a district court with original jurisdiction over "a class action" where: (1) there are 100 or more putative class members; (2) at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregated amount in controversy exceeds $5,000,000, exclusive of costs and interest. 28 U.S.C. § 1332(d)(2), (5)(B), (6).

The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal. Washington v. Chimei Innolux Corp., — F.3d — , 2011 WL 4543086 (9th Cir. 2011).

The applicable burden of proof, however, varies depending on the pleadings. When the state court complaint "affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994, 1000 (9th Cir. 2007)). Two basic principles informed this decision- the limited jurisdiction of federal courts is strictly construed and the plaintiff is the "master of her complaint" and can plead to avoid federal jurisdiction. Lowdermilk, 479 F.3d at 998-999. By adopting the "legal certainty" standard, "we guard[ed] the presumption against federal jurisdiction and preserve[d] the plaintiff's perogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court." Lowdermilk, 506 F.3d at 999; Lewis v. Verizon Commc'n, Inc., 627 F.3d 395, 399 (9th Cir. 2010) ( "Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.").

Where the state court does not specify the amount in controversy, the preponderance of the evidence applies. Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 683 (9th Cir.2006). The standard requires that the defendant prove that it is more likely than not that the amount in controversy is greater than the jurisdictional minimum. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 2007).

Finally, if the state court complaint is ambiguous as to the total recovery sought, the preponderance of the evidence standard applies. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007).

## DISCUSSION

A.   <u>Applicable Standard</u>

The parties do not dispute that there are 100 or more putative class members and that at least one class member is a citizen of a state different from the state of any defendant. Rather, the parties disagree as to whether the amount in controversy exceeds $5,000,000.

The parties also disagree on the standard of proof applicable to this determination. As the removing party, Defendant has the burden of proving that the amount in controversy exceeds $5,000,000 and according to Defendant, the preponderance of the evidence standard applies. Plaintiff, on the other hand, believes that he has affirmatively alleged that the amount in controversy was less than $5,000,000 and that Defendant must therefore prove with a legal certainty that the CAFA amount is met.

The Court agrees that Plaintiff affirmatively alleged in the FAC that the amount in controversy was less than $5,000,000. Under "Jurisdiction and Venue," Plaintiff specifically alleges that "the aggregate amount in controversy for the proposed class action, including compensatory damages, restitution, injunctive relief, civil and statutory penalties, and attorneys' fees requested by Plaintiff, is less than $5,000,000, exclusive of costs and interests." FAC, ¶ 1.

Defendant attempts to create an ambiguity by pointing out that the allegation in the "Jurisdiction and Venue" section does not match the "Prayer for Relief," where Plaintiff states that he is seeking "damages, restitution, injunctive relief, restitution, penalties and attorneys' fees in excess of $25,000 but not to exceed $5,000,000, *exclusive of attorneys' fees* and costs." FAC, p. 19. According to Plaintiff, "exclusive of attorneys' fees" is a typographical error. Declaration of Raul Perez, ¶ 5. Indeed, when reading the Jurisdiction and Venue allegation together with the Prayer for Relief, it is apparent that "exclusive of attorneys' fees" is an inadvertent error. The Court will not create an ambiguity based on this language.

Defendant also argues that it is unclear whether liquidated damages sought on certain claims are included in the "amount in controversy." The allegation in "Jurisdiction and Venue," however, clearly limits the "aggregate amount in controversy" to $5,000,000. The Court will not infer an ambiguity where the FAC is clear on its face.

This does not end the inquiry, however. The "legal certainty" standard only applies where the plaintiff has affirmatively pled an amount lower than $5,000,000 in *good faith*. Lowdermilk, 506 F.3d at 999. While a plaintiff is the "master" of his complaint and can plead to avoid federal jurisdiction, the allegations must be made in good faith. Lowdermilk, 479 F.3d at 998-999.

Here, Plaintiff defines the class as "All non-exempt or hourly paid employees, who worked for Defendants in California, in a retail store, within four years prior to the filing of this complaint until the date of certification." FAC, ¶ 16. According to Defendant's calculations, the class consists of approximately 14,314 individuals. Declaration of Tara Walchesky ("Walchesky Dec."), ¶ 12.[3] When the number of possible class members is combined with the number of claims, it begs the question how Plaintiff can, in good faith, limit the amount in controversy to $5,000,000. In response to Defendant's argument that Plaintiff lacked good faith, Plaintiff made no effort to support his allegations. Though Defendant has provided the Court with a factual analysis sufficient to question Plaintiff's limitation, Plaintiff fails to respond with *any* facts upon which his limitation is based.

The Court recognizes that discovery has not yet commenced, but in light of Defendant's facts, Plaintiff cannot simply rest on his desire to be in state court. At the hearing, Plaintiff's counsel explained that he interviewed Plaintiff and combined the information with the amounts recovered in similar actions. Yet this explanation does not counter the facts offered by

---

[3] Plaintiff objects to much of Ms. Walchesky's declaration as inadmissible hearsay. Plaintiff contends that reviewed Defendant's business records in performing her calculations but has not established a hearsay exclusion under Federal Rule of Evidence 803(6). Ms. Walchesky states that she is the Manager of "HRIS & Compensation Lead for American Eagle Outfitters, Inc." and that the information set forth in her declaration is based on her experience, personal knowledge and "the records of American Eagle kept in the ordinary course of business- including records provided by HR and payroll business partners." Walchesky Dec., ¶ 1. Therefore, and assuming an evidentiary objection to documents in support of a Notice of Removal is permissible in the first instance, Ms. Walchesky's statements are sufficient to meet the 803(6) exclusion. Plaintiff's objections are overruled.

Defendant and leaves the Court with no means of determining how Plaintiff, in good faith, limited the amount in controversy[4].

Therefore, the Court finds that even though Plaintiff has affirmatively alleged that the amount in controversy is less than $5,000,000, he has not done so in good faith. Defendant must therefore prove, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.

B.   Analysis of Defendant's Calculations

    1.   *Failure to Provide Seating Claim*

In the Fourth Cause of Action, on behalf of himself and "all members of the Penalties Subclass[5]," Plaintiff alleges:

> Defendants violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(14) because Plaintiff and aggrieved employees were not permitted to sit, even when sitting would not interfere with their duties. Furthermore, they were not permitted to sit even when not engaged in active duties. Defendants' retail stores do not contain seating on the sales floor or at the register. Although stores have break rooms, the break room had insufficient seats. Plaintiff was often unable to sit during his breaks. If seating had been provided as required, Plaintiff and class members could have sat when not engaged in customer service on the sales floor. Plaintiff and class members could also have sat when operating the cash register. However, Defendants instructed Plaintiff and class members to remain standing and not to sit while working. FAC, ¶ 71.

Plaintiff further alleges that he and aggrieved employees are "entitled to recover all remedies available for violations of California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(14)." FAC, ¶ 72. In the Seventh Cause of Action for PAGA penalties, Plaintiff contends that he and the Penalties Subclass are entitled to recover PAGA penalties based on Defendant's failure to provide suitable seating. FAC, ¶¶ 93, 94.

Defendant's calculation of $10,959,200 in controversy for this claim is based solely on the PAGA penalties. California Labor Code section 2699(f)(2) provides for a civil penalty of $100 for each aggrieved employee, per pay period, for the first violation and $200 for each

---

[4] At hearing on this motion Plaintiff's counsel stated that the firm handled many other such actions and their experience was that those actions settled for less than $5,000,000.

[5] The Penalties Subclass is defined as "all non-exempt employees who worked for Defendants in California, in a retail store, within one year prior to the filing of this complaint until the date of certification." FAC, ¶ 16.

aggrieved employee, per pay period, for each subsequent violation.  A one year statute of limitations applies under PAGA.  Cal. Code Civ. Proc., § 340(a).

Defendant contends that its payroll records show that the total number of non-exempt retail employees who worked in its California stores from May 12, 2010, to the present is approximately 5,153.  Within that time period, these employees worked a total of 57,445 pay periods.  Of these pay periods, 5,298 were initial pay periods and 52,147 were subsequent pay periods.  Walchesky Dec., ¶ 14.

To calculate the amount in controversy, Defendant assumed a 100 percent violation rate based on the language in the complaint.  Defendant then used the following formula: [(Total initial pay periods during PAGA limitations period: 5,298) x (Applicable penalty under PAGA for initial violations: $100)] + [(Total subsequent pay periods during PAGA limitations period: 52,147) x (Applicable penalty under PAGA for subsequent violations: $200)] = $10,959,200.

Plaintiff's main objection to this calculation is Defendant's assumption of a 100 percent violation rate.  According to Plaintiff, Defendant "selectively excerpted language" from the FAC and reads "all" or "each" into statements that did not specify the frequency of the alleged conduct or the number of people affected.

Plaintiff's argument, however, ignores the straightforward allegations in the FAC: "[T]hey were not permitted to sit, even when sitting would not interfere with their duties," and "[T]hey were not permitted to sit even when not engaged in active duties."  Most importantly, Plaintiff alleges that "Defendants' retail stores do not contain seating on the sales floor or at the register."  FAC, ¶ 71.  Defendant need not infer or speculate to reasonably conclude, from Plaintiff's own allegations, that a violation occurred during every pay period when a Penalties Subclass member wanted to sit but could not because there were no seats on the floor or at the register.

Insofar as Plaintiff contends that there is no evidence that all employees had the same job description, his argument fails to consider that he did not allege any differences in job descriptions or limit the claim to certain types of employees.  Indeed, the definition of the

Penalties Subclass is "all non-exempt employees who worked for Defendants in California, in a *retail store*. . ." Most likely those working in the retail store would be impacted by the lack of seating on the sales floor or at the cash register.

Moreover, the timekeeping systems from which the number of class members was derived required "all American Eagle *retail* employees, including *retail* employees in California," to clock in and out of work on the cash registers and/or computers in the stores. Walchesky Dec., ¶¶ 3-7. It therefore appears that Defendant's calculation is based on retail employees. Nonetheless, even assuming a 50 percent violation rate, the amount in controversy remains over $5,000,000.

Plaintiff also argues that he did not allege when the violations began and Defendant therefore assumes that the violations occurred during the entire statute of limitations period. Yet the very definition of the Penalties Subclass informs Defendant of the exact timing of the violations. Plaintiff defines the Penalties Subclass as "all non-exempt employees who worked for Defendants in California, in a retail store, within one year prior to the filing of this complaint until the date of certification." The allegation in the seating claim specifically includes "Plaintiff and all members of the Penalties Subclass." Defendant is entitled to rely on the class definition, where the allegations are not otherwise limited, despite Plaintiff's current characterizations of his allegations as vague.

Finally, Plaintiff alleges that Defendant cannot aggregate the amounts recoverable by Plaintiff under PAGA and the amounts recoverable by the LWDA. This Court has rejected this claim. Schiller v. David's Bridal, Inc., 2010 WL 2793650 (E.D. Cal. 2010) ("it makes little difference whether the LWDA shares in this recovery- Plaintiff, by alleging PAGA penalties, has put 100% of the PAGA penalties in controversy.").

Therefore, based *only* on the PAGA penalties related to the failure to provide seating claim, the Court finds that Defendant has shown that it is more likely than not that the amount in controversy exceeds $5,000,000. The Court also finds that even under a legal certainty standard, Defendant prevails. Defendant has supported its calculations with non-speculative, concrete evidence.

2.   *Remainder of Calculations*

The Court has found that jurisdiction exists based solely on the PAGA penalties for the seating claim.  While the Court need not explore in detail the remaining calculations, all of which are disputed by Plaintiff, the supported calculations demonstrate that the amount in controversy will likely increase further.

For example, in the Sixth Cause of Action, Plaintiff alleges a violation of California Labor Code section 226(a), which requires an employer to furnish an accurate, complete and itemized wage statement to each employee.  Plaintiff alleges that "Defendants have intentionally and wilfully failed to provide employees with complete and accurate wage statements."  FAC, ¶ 83.  As a result, Plaintiff alleges that he and class members "have suffered injury and damage to their statutorily protected rights."  FAC, ¶ 84.  "Specifically, Plaintiff and class members have been injured by Defendants' intentional violation . . .because they were denied both their legal right to receive, and their protected interest in receiving, accurate, itemized wage statements under California Labor Code section 226(a)."  FAC, ¶ 85.

Plaintiff further alleges that he and class members are entitled to recover "the greater of their actual damages . . . or an aggregate penalty not exceeding four thousand dollars ("$4,000) per employee."  FAC, ¶ 87.

Section 226(a) allows recovery of the greater of all actual damages or $50 for the initial pay period in which the violation occurs and $100 per employee for each subsequent pay period in which a violation occurred, not exceeding an aggregate penalty of $4,000.  A one year statute of limitations applies.  Cal. Code Civ. Proc., § 340(a).

To calculate the amount in controversy, Defendant assumed a 100 percent violation rate based on the language of the FAC.  Based on the one year limitations period, Defendant used the number of pay periods for the Penalties Subclass in the following formula: [(Initial pay periods worked by employees during the one year statute of limitations period: 5,298) x (Applicable penalty for initial violations: $50)] + [(Subsequent pay periods worked by employees during the one year statute of limitations period: 52,147) x (Applicable penalty for subsequent violations: $100)] = $5,479,600.  Walchesky Dec., ¶ 24.  Defendant explains that the $4,000 cap was not

triggered due to the frequency of pay periods (once every two weeks) and the amount of time elapsed in the one year limitations period.

Plaintiff opposes the 100 percent violation rate, contending that Defendant reads the complaint too broadly and assumes that all class members suffered a wage statement violation. Yet as with the seating claim, Plaintiff's allegations state, without limitation, that Defendant failed to provide employees with accurate wage statements and that "Plaintiff and class members" have been injured by this failure.

Again, the Court does not specifically adopt this calculation but instead uses it as an illustration of the significant amount of damages Plaintiff has alleged in his FAC.

## ORDER

Based on the above, the Court DENIES Plaintiff's Motion to Remand this action.

IT IS SO ORDERED.

Dated:   **October 13, 2011**                              **/s/ Dennis L. Beck**
                                                            UNITED STATES MAGISTRATE JUDGE