1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   BRIAN BUTTERWORTH,                         CASE NO. CV F 11-1203 LJO DLB

12                        Plaintiff,            **O R D E R   O N   R E Q U E S T   F O R**
                                                **RECONSIDERATION**
13            vs.

14   AMERICAN EAGLE OUTFITTERS, INC.

15                        Defendant.

16   _____/

17                                      **<u>INTRODUCTION</u>**

18           Plaintiff Brian Butterworth "(Mr. Butterworth") moves for reconsideration of the October 14,

19   2011 Order Denying Plaintiffs' Motion to Remand Action ("Remand Order"), issued by United States

20   Magistrate Judge Dennis L. Beck ("magistrate judge").  Mr. Butterworth argues that the magistrate judge

21   committed clear error to conclude that this Court has original jurisdiction over this action pursuant to

22   the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA").  Specifically, Mr. Butterworth argues that

23   the magistrate judge committed clear error by requiring Mr. Butterworth to produce extrinsic evidence

24   that the allegations of his pleading were made in good faith.  In addition, Mr. Butterworth argues that

25   the magistrate judge clearly erred by drawing negative inferences against him  Defendant American

26   Eagle Outfitters, Inc. ('American Eagle") opposes this motion, arguing that the magistrate judge did not

27   err to find that this Court has federal jurisdiction over this action.  Having considered the parties'

28   arguments and the applicable legal authorities, this Court AFFIRMS the magistrate judge's decision.

                                                1

## BACKGROUND

American Eagle employed Mr. Butterworth from October 2008 until February 2011.  During that time, Mr. Butterworth worked as a sales associate, a non-exempt hourly paid position, at American Eagle's retail stores in Capitola, CA and San Jose, CA.  Mr. Butterworth's duties included helping customers to pick out clothing, opening fitting rooms, operating cash registers, unloading merchandise trucks, and stocking new items.

On May 12, 2011, Mr. Butterworth initiated this class action, on behalf of himself and others similarly situated, in the Stanislaus County Superior Court.  Proceeding on his first amended complaint ("FAC"), Mr. Butterworth asserts the following eight causes of action against American Eagle, all rooted in California law:

1.     Unpaid minimum wages;

2.     Unpaid reporting time pay;

3.     Failure to compensate for split shifts;

4.     Failure to provide seating;

5.     Wages not paid upon termination;

6.     Non-compliant wage statements;

7.     Violation of the Private Attorney General Act ("PAGA"); and

8.     Unfair Business Practices, in violation of California Business and Professions Code sections 17200 et seq.

In the FAC, Mr. Butterworth defines a class as "all non-exempt or hourly paid employees who worked for Defendants in California, in a retail store, within four years prior to the filing of the complaint until the date of certification." FAC ¶16. The FAC also defines a penalties subclass. *Id*.  The FAC raises each claim on behalf of all class members.  FAC ¶¶ 42, 50, 66, 74, 80, 89.

Mr. Butterworth asserts no federal causes of action, and the parties do not dispute that complete diversity of citizenship is lacking.  In the "Jurisdiction and Venue" section of the FAC, Mr. Butterworth alleged that "the aggregate amount in controversy for the proposed class action, including compensatory damages, restitution, injunctive relief, civil and statutory penalties, and attorneys' fees requested by Plaintiff, is less than five million dollars ($5,000,000), exclusive of interests and costs." FAC ¶ 1.

2

American Eagle removed this action to this Court on July 20, 2011, asserting that jurisdiction was proper pursuant to CAFA.  CAFA confers a district court with original jurisdiction over "a class action" if the following elements are met: (1) there are 100 or more putative class members; (2) at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregated amount in controversy exceeds $5,000,000 exclusive of costs and interest. 28 U.S.C. §§1332(d)(2), (5)(b), and (6).  In its notice of removal, American Eagle presented evidence to support CAFA jurisdiction on a number of grounds.

Relevant to this motion, American Eagle asserted that the amount of controversy exceeds $5,000,000.00 exclusive of costs and interest.  American Eagle contended that based on its review of its employment records, a conservative estimate of the amount of controversy was closer to $40,000,000.00, based on the following evaluations of Mr. Butterworth's claims:

| | |
|---|---|
| Failure to Provide Seating Claim | $10,959,200.00 |
| Minimum Wage (Off-the-Clock) Claim | $ 1,059,874.89 |
| Split Shift Claim | $     187,676.86 |
| Reporting Pay Claim | $     129,296.69 |
| Waiting Time Claim | $ 2,459,216.47 |
| Itemized Wage Statement Claim | $ 5,479,600.00 |
| Meal Period Claim | $ 5,479,600.00 |
| Timely Pay Claim | $ 2,769,069.81 |
| Attorneys' Fees | $ 9,507,835.40 |
| **TOTAL:** | **$38,031,370.11** |

American Eagle's lengthy, detailed notice of removal, supported by attached exhibits and declarations, explained how it arrived at its estimate of the amount in controversy.  American Eagle claimed that its review of employment records, including actual payroll data for the class members as defined in the FAC, revealed the following raw data:

•       Number of Class members: 14,314

•       Penalties Subclass: 5,153

•       Actual Pay Periods: 202,238

•       Penalties Subclass pay periods: 57,445

American Eagle explained that in calculating its estimated amount in controversy, it considered each

3

1    putative class member's actual wage rates, full-time versus part-time status, dates of termination, and

2    other factors.  American Eagle's class size estimates were made based on the class as defined in the

3    FAC.

4         American Eagle averred that the violation rates it estimated were tethered to an actual

5    examination of Mr. Butterworth's time and pay records in the context of precise allegations he made in

6    the FAC concerning when and for how long he (and the class) worked off the clock (FAC ¶44), when

7    and how he (and the class) worked split shifts (FAC ¶¶61, 62), and whether there were instances when

8    he (and the class) was eligible for reporting pay (FAC ¶¶50-55).  Based on these allegations, American

9    Eagle estimated the following calculations:

10   •    Off the clock violations: 1.8 per year

11   •    Split shift violations: 3.0 per year;

12   •    Report pay violations: 2.4 per year; and

13   •    Waiting time/timely pay penalties: 1 in 4 terminated class members experience a wage

14        underpayment over the course of their tenure.

15   American Eagle used these numbers to calculate the corresponding claims.  As to the seating violations

16   claim and the wage statement claim, American Eagle calculated its amount in controversy based on a

17   100% violation rate.   American Eagle notes that the numbers are conservative because they did not

18   include the inevitable growth in the class size, payroll periods, damages and penalties over the course

19   of the litigation.  As to attorneys' fees, American Eagle based its estimate on an average common fund

20   class action attorneys' fees award of one-third of the common fund.

21        Mr. Butterworth challenged removal jurisdiction on August 19, 2011, moving to remand the

22   action to the Stanislaus County Superior Court.  Mr. Butterworth argued that American Eagle failed to

23   meet its heavy burden to justify removal.  Mr. Butterworth argued that because he is the master of his

24   complaint, and alleged that the amount in controversy is less than $5,000,000.00, removal of this action

25   to the federal court was improper.

26        After an October 7, 2011 hearing, the magistrate judge issued an October 14, Remand Order.

27   In the Remand Order, the magistrate judge reasoned:

28        When the number of possible class members is combined with the number of claims, it

                                              4

1    begs the question how Plaintiff can, in good faith, limit the amount in controversy to
2    $5,000,000.  In response to Defendant's argument that Plaintiff lacked good faith,
     Plaintiff made no effort to support his allegations.  Though Defendant has provided the
3    Court with a factual analysis sufficient to question Plaintiff's limitation, Plaintiff fails to
     respond with *any* facts upon which his limitation is based.

4         The Court recognizes that discovery has not yet commenced, but in light of
5    Defendant's facts, Plaintiff cannot simply rest on his desire to be in state court.  At the
     hearing, Plaintiff's counsel explained that he interviewed Plaintiff and combined the
6    information with the amounts recovered in similar actions.  Yet this explanation does not
     counter the facts offered by Defendant and leaves the Court with no means of
7    determining how Plaintiff, in good faith, limited the amount in controversy.

8    *Id*. at 5-6 (emphasis in original).  Based on this analysis, the Court concluded that "even though Plaintiff

9    has affirmatively alleged that the amount in controversy is less than $5,000,000, he has not done so in

10   good faith." *Id*. at 6.

11        Because the Court found that the amount in controversy was not alleged in good faith, the Court

12   applied the preponderance of the evidence standard, rather than the legal certainty standard of review.

13   Applying this standard, the magistrate judge found that American Eagle had established that the amount

14   in controversy exceeded $5,000,000.  To arrive at this conclusion, the magistrate judge analyzed and

15   adopted American Eagle's calculations as to Mr. Butterworth's failure to provide seating claim.  The

16   magistrate judge pointed out that "based *only* on the PAGA penalties related to the failure to provide

17   seating claim," American Eagle has demonstrated that it is more likely than not that the amount in

18   controversy exceeds $5,000,000.  *Id*. at 8 (emphasis in original).

19        Based on American Eagle's well-supported calculations related to the seating claim, the

20   magistrate judge further found that "even under a legal certainty standard, Defendant prevails.

21   Defendant has supported its calculations with non-speculative, concrete evidence." Remand Order, p.

22   8.  Thus, the magistrate judge ruled in the alternative that American Eagle established the amount in

23   controversy based on both the preponderance of the evidence and legal certainty standards.

24        Although the magistrate judge arrived at his conclusion based on his analysis of the seating claim

25   alone, he noted that American Eagle's calculations for the other claims "demonstrate that the amount

26   in controversy will likely increase further." *Id*. at 9.  Although the magistrate judge did not adopt the

27   other calculations specifically, the court "use[d] it as an illustration of the significant amount of damages

28   Plaintiff has alleged in his FAC." *Id*. at 10.

5

1    Mr. Butterworth requested reconsideration of the Remand Order on October 31, 2011.  Mr.

2  Butterworth argues that the magistrate judge erred in requiring Mr. Butterworth to produce extrinsic

3  evidence to prove that his allegations were made in good faith.  In addition, Mr. Butterworth contends

4  that the magistrate judge's finding on Mr. Butterworth's seating claim is clearly erroneous.  American

5  Eagle opposed the reconsideration request, arguing that the magistrate judge did not commit clear error.

6  Having considered the parties' arguments, the relevant case law, and the record, this Court issues the

7  following order.

8                                   **STANDARDS OF REVIEW**

9                                          **Reconsideration**

10    Pursuant to Local Rule 303(f), this Court upholds a magistrate judge decision unless it was

11  "clearly erroneous or contrary to law." *Id*.; 28 U.S.C. §636(b)(1)(A).; *see also*, Fed. R. Civ. P. 72(a).

12  The "clearly erroneous" standard applies to the magistrate judge's factual determinations and

13  discretionary decisions. *Computer Econs., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983 (S.D.

14  Cal. 1999); *see also, Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991)

15  (discretionary non-dispositive pre-trial matters by magistrate judge are reviewable for clear error).

16  Review under the "clearly erroneous" standard is "significantly deferential." *Concrete Pipe & Prods.

17  v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993) (quotations omitted); *Security Farms v.

18  Intern'l Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997).  Under this standard, this Court "can

19  overturn the magistrate judge's ruling only if the district court is left with the definite and firm

20  conviction that a mistake has been committed." *Computer Econs.*, 50 F. Supp. 2d at 983.  In reviewing

21  discretionary decisions of the magistrate judge, this Court may not substitute its judgment for that of the

22  deciding court. *United States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988).  On the other hand, the

23  "contrary to law" standard allows "independent, plenary review of purely legal determinations by the

24  magistrate judge." *FDIC v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000).

25                                   **Removal Jurisdiction**

26    The Court considers the magistrate judge's decision through the lens of removal jurisdiction

27  jurisprudence. American Eagle removed this action pursuant to 28 U.S.C. § 1441.  A defendant may

28  remove an action filed in state court to a federal district court if the federal court "would have original

1    jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United

2    States[.]" *Id.*  The removal statute "is strictly construed and federal jurisdiction must be rejected if there

3    is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th

4    Cir.1996) (internal quotations and citations omitted). A defendant seeking removal of an action to

5    federal court has the burden of establishing the grounds for federal jurisdiction. *Lockyer v. Dynegy, Inc.*,

6    375 F.3d 831, 838 (9th Cir. 2004).

7        A district court's federal-question jurisdiction extends over "only those cases in which a

8    well-pleaded complaint establishes either the federal law creates the cause of action or that the plaintiff's

9    right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax*

10   *Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983) (quoted in *Christianson v. Colt*

11   *Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988)). Thus, the "presence or absence of

12   federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal

13   jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded

14   complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotations and citations

15   omitted); *Vaden v. Discover Bank*, --- U.S. ----, 129 S.Ct. 1262, 1272 (2009). "The rule makes the

16   plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state

17   law," *id*., and existence of federal jurisdiction is determined by the complaint at the time of removal.

18   *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979).

19       With these standards in mind, the Court turns to the parties' arguments.

20                                          **DISCUSSION**

21   **I.    CAFA Framework**

22       The parties dispute whether the amount in controversy exceeds $5,000,000.00 exclusive of

23   interests and costs.  As set forth above, CAFA provides that district courts have original jurisdiction over

24   any civil class action in which the amount in controversy exceeds $5,000,000.00 exclusive of interest

25   and costs, the total number of class members is 100 or greater, and any member of the plaintiff class is

26   a citizen of the state different fro many defendant. 28 U.S.C. §1332(d).  In assessing the amount in

27   controversy, "the claims of the individual class members shall be aggregated to determine whether the

28   matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. §1332(d)(6).

1  The law is well-settled regarding which party bears the burden of establishing removal

2  jurisdiction.  "Under CAFA the burden of establishing removal jurisdiction remains...on the proponent

3  of federal jurisdiction." *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).  That

4  is, American Eagle, as the proponent of removal jurisdiction, bears the burdens of proof and persuasion.

5  Although the party bearing the burden is firmly established, the burden of proof varies according

6  to the allegations of the complaint.  When the amount in controversy is "unclear or ambiguous from the

7  face of the state-court complaint"[1] or if the state-court complaint does not specify an amount in

8  controversy, the Court applies a preponderance of the evidence standard of review. *Guglielmino v.*

9  *McKee Foods Corp.*, 506 F.3d 696, 699-700 (9th cir. 2007).  On the other hand, if a complaint alleges

10  affirmatively that the amount in controversy is less than the jurisdictional threshold, "the party seeking

11  removal must prove with legal certainty that CAFA's jurisdictional amount is met."*Lowdermilk v. U.S.*

12  *Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007).  The legal certainty standard is "high but not

13  insurmountable." *Id.*

14  **II.   Analysis**

15  Mr. Butterworth contends that the magistrate judge erred to require him to bear the burden of

16  establishing that his allegations were made in good faith.  Mr. Butterworth presents a lengthy argument

17  related to the magistrate judge's analysis regarding whether Mr. Butterworth's amount in controversy

18  allegation was made in good faith.  The magistrate judge's determination that this allegations was not

19  made in good faith led the magistrate judge to apply the preponderance of the evidence burden of proof.

20  Having considered the magistrate judge's Remand Order, the parties' arguments, applicable case law,

21  and the record, and for the following reasons, this Court is not left with a firm conviction that an error

22  was made.  Rather, this Court affirms the magistrate judge's ruling that American Eagle established with

23  a legal certainty that the amount in controversy exceeds $5,000,000.

24  _____

25  [1]American Eagle argued that the amount in controversy as alleged in the FAC was ambiguous, because the amount set forth in the Jurisdiction and Venue section differed from the Prayer for Relief section.  Specifically, although the

26  Jurisdiction and Venue section made clear that the amount in controversy was less than $5,000,000 excluding interest and costs, the Prayer for Relief Section provided that the amount in controversy was less than $5,000,000, excluding *attorneys'*

27  *fees*, interest, and costs.  It is well-settled that attorneys' fees is including in the amount in controversy calculation for CAFA purposes. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699-700 (9th Cir. 2007).  Notwithstanding this ambiguity,

28  this magistrate judge found that the FAC was not ambiguous.  Based on this finding, the magistrate judge concluded that the appropriate burden of proof of legal certainty.

Even if this Court assumes arguendo that Mr. Butterworth alleged the amount in controversy in good faith, this Court must still determine whether American Eagle established with legal certainty that the amount in controversy exceeds the statutory minimum.  While *Lowdermilk* determined that a court applies the "familiar legal certainty" standard when a defendant seeks to remove a state court action based on CAFA and the state court complaint alleges that the amount in controversy less than the jurisdictional amount, the Court failed to define that burden.  The Court explained that "good faith in this context is entwined with the legal certainty test, so that a defendant will be able to remove the case to federal court by showing to a legal certainty that the amount in controversy exceeds the statutory minimum." *Lowdermilk*, 479 F.3d at 999 (citations omitted).  The Court noted the "legal symmetry" in adopting this standard, as a defendant seeking remand for a case initially filed in federal court must show with "legal certainty" that the claim is actually for an amount less than the jurisdictional minimum." *Id*. (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 401-02 (9th Cir. 1996)).  Accordingly, this Court looks to the legal certainty standard as defined in the diversity jurisdiction context for guidance.  In the diversity jurisdiction context, "legal certainty...means a federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount.'" *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 11006 (9th Cir. 2010) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)).  Considering "the presumption against federal jurisdiction" in the removal context, and to "preserve plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court," *Lowdermilk*, 479 F.3d at 999, this Court defines the legal certainty standard in the current context as follows: A federal court shall not have subject matter jurisdiction unless, upon the face of the complaint, it is obvious that the suit involves an amount in controversy that exceeds the statutory minimum; to wit, $5,000,000 excluding interests and costs.

The magistrate judge found that "even under a legal certainty standard" American Eagle established that Mr. Butterworth's claims exceeded the statutory minimum.  The magistrate judge arrived at this conclusion after analyzing American Eagle's calculations related to Mr. Butterworth's failure to provide seating claim, which the magistrate judge found were "supported...with non-speculative, concrete evidence." Remand Order, p. 8.  Having reviewed the parties' arguments and the

1  record, this Court is not "left with the definite and firm conviction that a mistake has been committed."

2  *Computer Econs.*, 50 F. Supp. 2d at 983.  Rather, this Court finds that the magistrate judge's conclusion

3  was well-supported by the allegations of the complaint and American Eagle's well-supported

4  calculations, which were also based on the allegations of the complaint.

5          In addition, this Court finds that the magistrate judge properly rejected Mr. Butterworth's

6  objections to American Eagle's use of the 100 % violation rate in its failure to providing seating

7  calculation.  Mr. Butterworth argues that the magistrate judge improperly drew negative inferences

8  against him by accepting the 100% violation rate calculation in the failure to providing seating claim.

9  This Court agrees with the magistrate judge to find that Mr. Butterworth's objections "ignores the

10 straightforward allegations in the FAC." Remand Order, p. 7.  The FAC alleged that "Defendants' retail

11 stores do not contain seating on the sales floor or at the register." FAC ¶71.   Based on this

12 allegation–that there was no seating provided–the magistrate judge properly reasoned that "Defendant

13 need not infer or speculate to reasonably conclude, from Plaintiff's own allegations, that a violation

14 occurred each pay period when a Penalties Subclass members wanted to sit but could not because there

15 were no seats on the floor or at the register." Remand Order, p.7.  This reasoning is not based on a

16 negative inference drawn against Mr. Butterworth.  This is a reasonable premise based on the allegation

17 itself.[2]  Moreover, as the magistrate judge pointed out, the minimum amount in controversy would be

18 exceeded even if the Court were to assume a 50% violation rate, since the total amount in controversy

19 for this claim alone was calculated to be over $10,000,000.

20         Ultimately, this Court finds no clear error with the magistrate judge's conclusion that American

21 Eagle established with legal certainty that the amount in controversy exceeds $5,000,000.  As set forth

22 above, American Eagle bore the burden to establish that upon the face of the complaint, it is obvious that

23 the suit involves an amount in controversy that exceeds the statutory minimum.  "The amount in

24 controversy is simply an estimate of the total amount in dispute, not a prospective assessment of

25

26         [2]Even if this Court were to ignore the failure to provide seating claim in its entirety, American Eagle has provided
   evidence to support its estimate that the amount in controversy of this action without the failure to provide seating claim is
27 $23,419,112.96.  While the magistrate judge did not adopt specifically all of the calculations, the magistrate judge point out
   that these calculations "illustrat[e] the significant amount of damages Plaintiff has alleged in his FAC." Remand Order, p.
28 10.  Mr. Butterworth failed to request reconsideration of the magistrate judge's further consideration of these other claims,
   and this Court finds no clear error in its determination of the "significant amount of damages Plaintiff has alleged in his FAC."

1  defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also*,

2  *McPhain v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof

3  of the amount the plaintiff will recover.  Rather, it is the estimate of the amount that will be put at issue

4  in the course of the litigation.").  The FAC specifically defines a class that, according to American

5  Eagle's employment records, includes 14,314 members.  Based on this class size, each member of the

6  class need only average $349.31 in controversy to meet CAFA's jurisdictional threshold.  This number

7  is reduced to a figure closer to $250, considering that attorneys' fees are included in the amount in

8  controversy calculation.  American Eagle correctly points out that this amount is attainted by one initial

9  PAGA violation and one subsequent violation of any type.  Because the FAC alleges eight separate types

10  of PAGA violations in count seven alone, and considering Mr. Butterworth's other claims for relief, this

11  Court is satisfied that, based on the allegations of the complaint, it is obvious that this action involves

12  an amount in controversy that exceeds the statutory minimum.[3]

13                                                      **ORDER**

14        For the foregoing reasons, this Court AFFIRMS the decision of the magistrate judge to deny

15  remand of this action.

16  IT IS SO ORDERED.

17  **Dated:    November 16, 2011              /s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28        [3] Because this Court affirms the magistrate judge's ruling based on the legal certainty standard, it does not reach Mr. Butterworth's arguments related to the magistrate judge's good faith determination.